EXHIBIT 8

```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF CONNECTICUT
 2
      - - - - - - - - - - - - - - x
 3                                :
      UNITED STATES OF AMERICA    :    No. 3:05-cr-00058(SRU)
 4             Government,        :    915 Lafayette Boulevard
                                  :    Bridgeport, Connecticut
 5          v.                    :
                                  :    August 12, 2019
 6    BOBBY MEDINA,               :
               Defendant.         :
 7                                :
      - - - - - - - - - - - - - - x
 8

 9                          RESENTENCING

10
      B E F O R E:
11
           THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.
12

13
      A P P E A R A N C E S:
14

15       FOR THE GOVERNMENT:

16          UNITED STATES ATTORNEY'S OFFICE
                 1000 Lafayette Boulevard
17               Bridgeport, Connecticut  06604
            BY:  HAROLD H. CHEN, AUSA
18

19       FOR THE DEFENDANT:

20          FEDERAL DEFENDER'S OFFICE
                 265 Church Street
21               New Haven, Connecticut  06510-7005
            BY:  KELLY M. BARRETT, FAFD
22

23
                   Sharon L. Masse, RMR, CRR
24                    Official Court Reporter
                      915 Lafayette Boulevard
25                 Bridgeport, Connecticut  06604
                       Tel: (860)937-4177
```

```
 1            So my point is simply that it's extremely
 2   unlikely that Mr. Medina is responsible for a quantity
 3   that would move his base offense level to a 36.  So I'm
 4   going to simply find that he's responsible for 50 grams.
 5   If you prefer that I find 60, that's fine too; a hundred,
 6   that's fine too.  But I don't believe there's any basis,
 7   given the government's proffer in this case, to believe
 8   that he's responsible for a quantity that would move us
 9   from a base offense level 34 to a 36.
10            MR. CHEN:  To clarify, that proffer was made,
11   again, just in the context of the plea and just providing
12   the floor and not the ceiling.
13            THE COURT:  That's right.  That's why I'm saying
14   if you believe that you can show that Mr. Medina sold such
15   a -- was responsible for such a large quantity of crack
16   that it would move him to a base offense level 36, then
17   let me know immediately, and we'll bring him back in, and
18   we'll talk about that.
19            MR. CHEN:  I think my preference is to make Your
20   Honor's finding on the same record that we had in 2007.
21   If we had -- if the government had to go back and assess
22   an accurate attributable crack cocaine quantity with
23   respect to Mr. Medina, given that there were 23 defendants
24   that were charged in this case, and I know that there were
25   individuals who did plead guilty to crack offenses, if I
```

1  remember correctly, and I can't represent to Your Honor
2  that it was only 50 or 60 grams. I would say if we're
3  going to make a specific finding on crack cocaine, it
4  would be several kilograms. That's my best recollection,
5  because this was an organization that sold powder and
6  crack, and essentially the government took its position in
7  2007 to facilitate those sentencings, because back then it
8  essentially was a moot issue. Both Mr. Luna and both
9  Mr. Medina qualified as level 36s under 50 to
10 150 kilograms of cocaine --
11          THE COURT: Right.
12          MR. CHEN: -- so it was essentially an academic
13 issue about the finding on crack. But if Your Honor wants
14 to predicate today's sentencing on an accurate finding of
15 crack cocaine, I'm going to need time to piece that
16 together. And I would say to Your Honor that amount is
17 not going to be just 50 to 60 grams of crack cocaine, as
18 an officer of the Court. It's not going to be close.
19          THE COURT: That's great. Is it going to be an
20 amount that moves us from base offense level 34 to base
21 offense level 36?
22          MR. CHEN: It could, if Your Honor's sentencing
23 is going to be based on coke and crack. The government is
24 willing to have your finding made just on powder cocaine
25 as you did in 2007.

1            THE COURT:  Well, I understand that, but I'm
2    here to make a factual finding about the quantity of drugs
3    attributable to Mr. Medina for purposes of the Guidelines.
4    He's responsible for at least 50 grams -- 50 grams of
5    crack cocaine.  Why should I not make that finding?
6            MR. CHEN:  You should not make that finding
7    because you chose not to make that finding in 2007, and
8    the sentence that was promulgated by Your Honor was a
9    function of the quantity finding you made there.  But if
10   you're asking me to make that -- to provide the factual
11   predicate so you can make an accurate finding, I'm going
12   to need some time to put that together.
13           THE COURT:  Okay.  I'm not asking you for that.
14           MR. CHEN:  Okay.
15           THE COURT:  I don't need an entirely accurate
16   to-the-gram finding.  I'm trying to calculate the
17   Guidelines.  The only reason to make a quantity
18   attribution is to calculate the Guidelines.  So in order
19   for this to matter, you would have to prove that
20   Mr. Medina sold or was responsible for a quantity of crack
21   cocaine equal to 17 million kilograms --
22   17 million kilograms of converted drug weight because
23   that's the difference between the cocaine at 34 and the
24   cocaine at 36.
25           MR. CHEN:  And how much would the 17 million be

1   translated in terms of crack cocaine?
2           THE COURT:  Well, by my math, 4.76 kilograms of
3   crack cocaine.  I don't recall that you proved
4   4.76 kilograms of crack cocaine with respect to any
5   defendant, including Mr. Luna.  Am I correct?
6           MR. CHEN:  That's correct; but the two
7   defendants where that attributable quantity would have
8   been in play would have been Mr. Luna and Mr. Medina, and
9   both individuals resolutely said, I'm not going to agree
10  to any figures that involve crack.
11          THE COURT:  They didn't -- right.  They didn't
12  agree.  The government is not limited by their agreement.
13  You can prove the quantity.  If you think it's going to
14  affect the base offense level, generally the government
15  would prove the quantity.  There was no written plea
16  agreement in this case, so the government was free to
17  prove whatever it wanted to.
18          I'm merely saying I'm going to make a finding
19  that Mr. Medina is responsible for 50 grams of crack
20  cocaine.  And if you think he's responsible for
21  4.76 kilograms of crack cocaine, you need to let me know
22  that right away, soon after today's proceeding.  I'm not
23  going to delay the proceeding because I don't believe that
24  the government has the evidence to prove that Mr. Medina
25  is responsible for 4.76 kilograms of crack cocaine.  He

1   denied any involvement with crack cocaine.  The government
2   made a proffer.  I'm accepting that proffer and making a
3   finding of 50 grams.  And if you think that that's
4   inappropriate, then provide me with the evidence very
5   promptly, and we'll consider what to do about that.
6           MR. CHEN:  I don't want to delay this
7   resentencing.  You know, this case has essentially laid
8   fallow for 16 years.  Those files are somewhere in the
9   federal records center right now.  And if Your Honor
10  wishes us to employ the usual precision that we would
11  employ with the attributable quantity, it would take some
12  time.
13          THE COURT:  No, but you don't usually employ
14  that precision.  Let's be clear.  You would prove an
15  amount to get into a particular base offense level or to
16  meet a mandatory minimum.  And so it's -- even Luna, you
17  didn't try to prove more than 65 to 95 kilograms because
18  it didn't move base offense levels.
19          MR. CHEN:  That's correct.
20          THE COURT:  Right.  And so you might be able to,
21  if you took weeks and reviewed every single transcript of
22  every phone call, you might be able to come up with a
23  higher number than 65 to 95, but the government didn't
24  make that effort, and it won't make that effort because it
25  doesn't matter, just like the crack here doesn't matter.

1        Let's be clear.  There's no need, under the
2   Guidelines, to make a precise finding when it will have no
3   effect on the Guideline range.  The only reason to make a
4   finding about quantity is to make sure that we accurately
5   calculate the Guidelines as we're required to do.
6        I'm telling you, based upon my review of the
7   record, what I have as a proffer, that it's 50 grams or
8   more.  That is enough for me to make a finding, I am
9   making that finding, and there's no reason to believe that
10  a finding of a larger quantity would affect the
11  Guidelines, and therefore it's not necessary to make a
12  precise determination of how much crack is attributable to
13  Mr. Medina.
14        MR. CHEN:  I understand what Your Honor is
15  saying with respect to the proffer.  But, again, I'm
16  struggling since we had a trial in this case.  We had
17  three defendants -- Arcadio Ramirez, Jose Luis Rodriguez
18  and Warren Hawkins -- who went to trial, and the testimony
19  from the cooperating witnesses, including Nelson Rosa and
20  Jose Pena, was that substantial quantities of the powder
21  cocaine that was obtained from the connections in New York
22  was cooked into crack cocaine and sold.
23        THE COURT:  That's great.  And what was the
24  testimony about Mr. Medina's knowledge of that?
25        MR. CHEN:  The government's position with

1  respect to Mr. Medina throughout this case is that he was
2  the right-hand man of Mr. Luna for the two and a half
3  years when he was involved in the drug organization.  So
4  all quantities essentially that Mr. Luna dealt with, they
5  were attributable to him.
6          THE COURT:  So Mr. Luna's knowledge is
7  attributable to Mr. Medina?
8          MR. CHEN:  Mr. Medina's involvement in running
9  the organization on a day-to-day basis for Mr. Luna would
10 make those quantities attributable to him.
11         THE COURT:  Well, they're attributable to him if
12 they're foreseeable to him.  Can we agree on that?
13         MR. CHEN:  Yes, Your Honor.
14         THE COURT:  All right.  And what evidence is
15 there that Mr. Medina foresaw that the amount of crack
16 cocaine that this conspiracy involved was more than
17 4.76 kilograms?
18         MR. CHEN:  As I said, Your Honor, for me to give
19 you a precise answer, I would need the time to unearth
20 that issue.  It's been 16 years --
21         THE COURT:  Sure.
22         MR. CHEN:  -- since we litigated this case.
23         THE COURT:  Exactly.
24         MR. CHEN:  And I'm happy for Your Honor to
25 sentence Mr. Medina solely on the powder cocaine finding

1  that Your Honor has made previously. I don't think a
2  crack cocaine finding is necessary in this case.
3             THE COURT: Well, okay.
4             MR. CHEN: I mean for purposes of resentencing
5  here today. And that's -- I wasn't --
6             THE COURT: I think it is necessary. The
7  government proffered that Mr. Medina was responsible for
8  50 grams or more of crack cocaine. The government has
9  since resisted the idea that this case has anything to do
10 with crack cocaine and has basically said, Because
11 Mr. Medina didn't admit to crack cocaine, you, Judge,
12 can't consider that this is a crack case.
13            It is a crack case. And for the record, I'm
14 going to rely upon the government's proffer that
15 Mr. Medina was responsible for 50 grams or more of crack
16 cocaine.
17            The government has had every opportunity to come
18 in and prove that Mr. Medina was responsible for some
19 other quantity of crack cocaine. That was not
20 accomplished at the first sentencing, and it hasn't been
21 accomplished today. If you think it can be accomplished
22 in a way that affects the Guideline calculation, which is
23 the only reason we are doing this, let me know. But I
24 don't want to hold up Mr. Medina's resentencing for the
25 government to pull records out of the records center and